Ware *v.* Hunnewell.

NEWELL WARE & *al. versus* JAMES HUNNEWELL & *al.*

The commissioners appointed to make partition of lands held by tenants in common, should make return of the manner in which they gave notice, to the persons interested, of the time and place of their meeting to proceed in making the partition, that the *Court* may determine whether *due notice was given.*

And unless it appears, from the return of the commissioners, that reasonable notice had been given to the persons interested, the report will not be accepted.

If notice may be legally given (in any case) by merely putting written notices into the mail, reasonable notice is not given, when the persons interested live at the distance of two hundred miles from the land to be partitioned, by placing notices to them in the mail, seven days before the time appointed to proceed in making the partition.

WARE and seven others petitioned to this Court, and represented that they were owners in common and undivided, with persons unknown to them, of seven twenty-fourths of one township, and of forty-nine one hundred and ninety-second parts of another; and prayed that the portions claimed by them in those townships might be severed from the other owners, and be set off to them, that they might hold those portions " in common and undivided with themselves."

After the publication of a notice in the newspaper published by the printer for the State, and no persons appearing to object, partition was ordered, and commissioners were appointed to make it. They returned a report of their proceedings at the October Term of this Court, 1839, when Hunnewell and three others, being part owners of the same townships, appeared and objected to the acceptance of the report, assigning fifteen causes for its rejection.

The eleventh was, that the commissioners did not give due notice to all concerned, that were known and within the State, before partition was made, that they might be present at the time of making the same.

These objections were overruled by EMERY J. then holding the Court, and the report was accepted. To this the respondents filed exceptions.

The portions of the commission and return of the commissioners, material to this objection, are extracted in the opinion of the Court. As no opinion was given touching the other objections, it becomes unnecessary to notice them.

*Cutting*, for the respondents, objected, that the provisions of the Statute of 1821, c. 37, § 7, had not been complied with, requiring that "due notice shall be given by the committee to all concerned; that are known and within the State, before such partition be made, that they may be present, if they see meet, at the time of making the same." He contended, that if the mode of giving notice was proper, that sufficient time had not been given. Much less time was allowed to make preparation and go into the wilderness, than the law requires to be given to attend to the taking of a deposition. But seven days were given for the letters to go two hundred miles, and for the persons interested to prepare themselves and travel that distance.

But the mode of giving notice was, in itself, wrong. The notice should have been served by an officer. There is far less reason for sending by mail, in this case, than for sending a notice to overseers of the poor. And nothing but the special act of the legislature could make that legal. *Groton* v. *Lancaster*, 16 Mass. R. 110.

The neglect to give due notice is fatal to the proceedings. *Ashley* v. *Brightman*, 21 Pick. 285.

*Ingersoll*, for the petitioners, contended that here was sufficient notice, both as to mode and time. The statute does not prescribe any mode of giving notice, and it is left entirely to the discretion of the commissioners. They are made, by statute, the judges of the reasonableness of the notice, and their decision is conclusive.

*J. Appleton* replied for the respondents.

The opinion of the Court was by

EMERY J. — Four individuals, professing to be interested in the tract of which partition is intended, appear and resist the acceptance of the report of the commissioners. These owners

have presented fifteen objections. Of this number, the thirteenth is not pressed. The eleventh objection, that the commissioners did not give due notice to all concerned that were known and within the State, before the partition was made, that they might be present at the time, is of a very serious character.

We may safely premise, that partition of a new township, intended to be accomplished upon the petition of a portion only of the owners coalescing, not for the purpose of obtaining a severance of each one's individual interest, but to keep up a union of common ownership on the part of the petitioners, in perhaps large masses, in the tract, which may be severed and set off to them, calls for great watchfulness on the part of the Courts, before whom the proceeding is to go on.

It is true we have no requisition of law, nor as yet even a rule of Court, that in cases of petitions for partition against owners alleged to be unknown, it should be made apparent on the record by affidavit of the petitioners, that they are ignorant of the names, rights or titles of such owners.

It is therefore highly probable that in many instances partitions are obtained, when in truth there is no actual notice to the other tenants in common.

If it be of importance that notice should be published in the newspaper, published by the printer of the State, to give notice of the pendency of the petition, previous to any interlocutory judgment that partition be made, as prayed for, it cannot be of less importance that those, whose interests are to be so very much affected, should, if practicable, have actual notice of the time when the partition is to be accomplished, that they may be heard before the commissioners.

It is not unlikely that too much looseness has prevailed in the mode, in which notice has been attempted to be given by commissioners.

In this case, the direction to the commissioners is " to make partition, being previously sworn to the faithful discharge of the trust, and giving due notice to the parties interested, that

are known and live within the State, that so they may be present, if they see fit at the time."

The commissioners return how they gave due notice, as they say, "to wit, notices written May 28, mailed May 30, 1839, directed to John and Thomas Perley, South Bridgeton; John Bradley, Portland; Moses Isaacs, Bangor, agent for the North American Company; Robert M. N. Smyth, Bangor; Ebenezer Barker, Charlestown, Mass.; Benjamin Fish, Boston; also gave James Hunnewell a notice in hand; Nathan Ware, the petitioners' agent, being present, did not give or send the petitioners any notice; and they living out of the State, they being the only persons interested known to the subscribers, did meet agreeable to said notice at the dwellinghouse of Isaac Stevens in South Lincoln, on Friday the seventh of June, 1839, at six o'clock in the afternoon, being near said township, Nathan Ware, agent of said petitioners, being the only person interested, present."

And the commissioners set off $\frac{7}{24}$ of one tract and $\frac{49}{192}$ of the other.

Have we from this return evidence that due notice was given to the parties interested that are admitted to be known, and living within the State, so that they might be present if they saw fit at the time?

It is a matter which ought to appear clearly of record in the return. We can judicially perceive that South Bridgeton must be nearly 200 miles from the place to be divided.

There is no provision by law, that notice shall be given by mail, nor indeed does there appear to be any prescribed form in which notice shall be communicated. And hence, it is argued, that it is left to the discretion of the commissioners. We are not satisfied of the soundness of this reasoning. It is not like the case of notice to an indorser of a note or bill of exchange, which may be established by proof of the seasonable deposit of a letter in the post office, giving the necessary information to the indorser. That is based upon the expectation that dealers in negotiable paper will be attentive to the course of mail, which has so long been settled as the proper channel

for the communication of intelligence as to the failure of acceptors of bills or makers of notes to perform their engagements. It appears to be a convenient commercial regulation. But when the question arose, whether notice to overseers of the poor of towns, that a pauper had become chargeable, was attempted to be given by mail, the experiment was held by the Court, previous to the separation, not to be a legal mode of giving the requisite information. *Inhabitants of Groton* v. *Inhab. of Lancaster*, 16 Mass. R. 110. And so the law remained in this State, till a statute was passed sanctioning that course. By St. c. 671, passed Feb. 18, 1835, it was deemed equivalent to actual delivery of such notice, if it arrive at the post office in the town where the maker resides. And there would appear much more propriety in adopting the post office as the channel of communication between the public municipal officers, in relation to such subjects, than in regard to individuals about intended partitions of remote wild lands.

In these cases of attempted partitions of townships, which may have exceedingly important bearing on the rights of others, it appears to us that if petitioners will bring themselves within the pale of the law, though no particular form of notice to be given is prescribed in the statute, they should take the precaution of showing such direct evidence to the commissioners of the service of the notice, that they can set it out in their return, and that no reasonable doubt can remain that notice was given. And it should also appear that the notice was reasonable, considering the distance of the party to be affected from the place to be divided. It cannot be supposed that one should be instantly prepared to go into an exploration of a forest at a great distance. Some allowance must be made for preparation. The commissioners here have acted wisely to return the manner in which they proceeded. The whole proof of notice should come from their return, in order that the Court may determine whether *due notice was given*. The law contemplates it. The commission directs it. It is not to be left to conjecture.

---

We regret that the return, in this case, has left the matter in such uncertainty, whether the notice intended to be given was actually received by all the persons living in this State and known to be interested. There were but seven days intervening between the time of mailing the written notices, and the time appointed for the division. Under these circumstances, we are constrained to pronounce, that, judicially, upon these proceedings, we cannot decide that due notice was given by the commissioners.

The exceptions must therefore be sustained, and the subject re-committed for further proceedings.